ELMORE v. SEABOARD AIR LINE RAILROAD.

(Filed June 13, 1902.)

1. NEGLIGENCE—*Master and Servant—Railroads.*

Where an automatic coupler is out of repair for a length of time reasonably sufficient to have it repaired, and an employee is injured in coupling the car, the railroad is liable, whether such employee was negligent in the manner of making the coupling or not.

2. CONTRIBUTORY NEGLIGENCE—*Negligence—Continuing Negligence—Master and Servant.*

Where the negligence of the railroad is a continuing negligence, there can be no contributory negligence which will discharge its liability to an employee for injuries caused thereby.

MONTGOMERY AND COOK, J J., dissenting.

ACTION by H. J. Elmore against the Seaboard Air Line Railway Company, heard by Judge *O. H. Allen* and a jury, at January Term, 1902, of the Superior Court of WAYNE County. From a judgment for the plaintiff, the defendant appealed.

*Allen & Dortch,* and *I. F. Dortch,* for the plaintiff.

*Day & Bell, J. B. Batchelor,* and *T. B. Womack,* for the defendant.

CLARK, J. This case is simply a repetition of *Greenlee v. Railroad,* 122 N. C., 977, 41 L. R. A., 399; *Troxler v. Railroad Co.,* 124 N. C., 191, 44 L. R. A., 313, 70 Am. St. Rep., 580, and the several cases affirming the doctrine therein laid down. It was in evidence that the defendant's cars were equipped with automatic couplers, but where the plaintiff was injured in making a coupling, there was evidence that the automatic coupler had been out of repair five months or more

to the knowledge of defendant. The plaintiff testified that he was ordered to make a coupling and was injured in so doing. He testified: "If the coupler had been in perfect condition, I would have been able to couple without putting my foot between there" (the cars); "if the link had been in perfect condition I would not have had to kick it," and much other evidence to the same purport, that he used his foot instead of his hand because the coupler, being out of order, and no stick being furished him, he could only make the coupling which the conductor ordered him to make by using his foot or hand, and he had more power in his foot; that he had seen his conductor use his foot to couple in that way and the conductor had seen him and others do so. The Judge charged the jury substantially that if the coupler was in repair the defendant was not guilty of negligence, or if the lack of repair of the coupler did not necessitate the plaintiff going between the cars to couple, there was no negligence on the part of defendant, but that if the coupler was out of condition for such length of time that defendant could have had it repaired, but failed to do so, and that plaintiff would not have been injured but for the condition of the couplers, and that in the condition in which the coupler was that it was necessary, in order to couple, to use the hand or foot, and that the plaintiff was under the orders of the conductor, who directed him to couple the cars, and in so doing plaintiff was injured, and if the jury further find that he would not have been injured but for the condition of the couplers, then the jury should find the first issue "Yes."

On the second issue the Court instructed the jury that if the coupler was out of repair and had been for such length of time that the defendant knew, or should have known it, and with the exercise of reasonable diligence could have had it repaired, and the plaintiff coupled the cars under the direction of the conductor, and that it was plaintiff's duty to obey the

conductor, and he would not have been injured but for the condition of the couplers, to answer the second issue (contributory negligence) "No."

The charge was much fuller and put every phase of the evidence which was favorable to the defendant, but the above presents the real point involved in the numerous exceptions. This proposition is settled in the cases above cited, to-wit, it is the duty of the defendant to use automatic couplers, and if, on failure so to do, injury occurs to an employee, which would not have happened if there had been a coupler, this is a continuing negligence on the part of the employer, which cuts off the defense of contributory negligence, such failure being the *causa causans*. If the automatic coupler was out of repair for a length of time reasonably sufficient to have it repaired and this was not done, it was the same thing as the failure to have the automatic coupler on that car. Without reiterating the reasoning which has induced the Court to make and abide by this ruling, and applying it to the case in hand, the judgment below must be

Affirmed.

DOUGLAS, J., concurs in result.

COOK, J., dissenting. I do not concur with the opinion of the Court. Plaintiff was instructed by the conductor to go back and couple the cars while he went to the office to get orders. The caboose was standing upon the main track; the box cars to be coupled to the caboose were upon the side-track. Afterwards the box cars were put in motion by being "kicked," and had rolled from the side-track upon the main track, and approaching the caboose to which they were to be coupled. The couplings upon these cars were "automatic." Upon the caboose car the link which connected the drawer pin to the lever had been taken out, so that, if the lip were shut, it

had to be opened with the hand. Plaintiff, as well as de-
fendant, knew that this link was out. As the box cars ap-
proached the caboose, plaintiff saw that the lip was closed and
knew that the coupling could not be made until the lip was
opened, and to do this he would have to raise the drawer pin
with one hand, and then open the lip. "I (he) looked at the
other cars (the ones approaching) and saw that the bumper on
them (it) was not open, but was closed. *  *  *  I *did not
know* these cars were coming *so fast*. I put my foot down
there, and as the cars came up with such rapidity they caught
my foot. *  *  *  It was caught on the rebound." It is
not contended that it was negligence in giving the plaintiff
the order to couple the cars. At the time the order was given
the cars had not been "kicked" or put in motion. The con-
ductor did not know, nor did the plaintiff at that time, that
the lip was closed. So plaintiff was not ordered to do a
dangerous act, or to assume the risk of any danger. When
plaintiff discovered that the coupling could not be made, be-
cause the lip was closed, the box cars were approaching very
near to the caboose; it was not his *duty then* to go in between
the moving cars—it was against the rules. Upon a failure to
make the coupling, the cars would have been stopped and then
the couplers could have been properly adjusted and the
coupling made with safety. The conductor's order to go
back and couple the cars did not impose upon plaintiff an obli-
gation to do so at a hazard, or to take any risk. Had the lip
been open—its usual condition—the coupling would have been
made; but being closed, and discovered so to be just as the
cars were coming together, plaintiff should have waited until
the cars stopped and then adjusted the couplers. But he
chose to do the foolish rather than the prudent thing, which
could not have been anticipated or prevented by defendant.
Therefore, I think the Court erred in not instructing the jury
that upon the whole evidence they should answer the second

issue, to-wit, "Did the plaintiff, by his own negligence, contribute thereto?" (to his injury) "Yes." Had the conductor been present, and seeing the conditions that existed, and then ordered the plaintiff to make the coupling, then, and in that event, I would concur in the opinion; but such was not the case.

It was the duty of plaintiff to look and see the conditions that existed, and, from his own testimony, it appears that he would not have taken the risk if he had looked and seen, for he says he "did not know these cars were coming so fast." Then, can defendant be responsible for such negligence?

MONTGOMERY, J., concurs in the dissenting opinion.